COURT OF APPEALS OF VIRGINIA


Present:   Chief Judge Felton, Judges Frank and Kelsey
Argued at Salem, Virginia


FRANK EUGENE SOLESBEE, JR.
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1498-06-3                 CHIEF JUDGE WALTER S. FELTON, JR.
                                                          NOVEMBER 13, 2007
COMMONWEALTH OF VIRGINIA


               FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                           Mosby G. Perrow, III, Judge

               B. Leigh Drewry, Jr. (Cunningham & Drewry, on brief), for
               appellant.

               Benjamin H. Katz, Assistant Attorney General (Robert F.
               McDonnell, Attorney General, on brief), for appellee.


       Following a jury trial, Frank Eugene Solesbee, Jr. (appellant) was convicted of robbery,

and use of a firearm during the commission of that robbery.  On appeal, he contends the trial

court erred in admitting evidence of other criminal offenses to establish his guilt.  He also

contends the trial court erred in denying his post-trial motion to dismiss the indictment because

the Commonwealth withheld exculpatory evidence.  Finding no error, we affirm appellant's

convictions.

                                        I.  BACKGROUND

       "Under familiar principles of appellate review, we view the evidence and all reasonable

inferences fairly deducible from that evidence in the light most favorable to the Commonwealth,

the party that prevailed below."  Banks v. Commonwealth, 41 Va. App. 539, 543, 586 S.E.2d

876, 877 (2003).  Consistent with this principle, the evidence proved that on June 9, 2005, H.L.,

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

then twenty-one years old, was working at a lingerie and novelty shop in Lynchburg. Approximately one hour into her shift, while customers were present and she was the only employee there, appellant entered the store, wearing khaki cargo shorts and a buttoned-down shirt. He commented that it was warm in the store, and then browsed around. Once the other customers left, appellant selected merchandise and followed H.L. to the cash register. When H.L. reached the register, she turned around and saw appellant aiming a "little, black, square gun" at her. Once he obtained the money from the cash register, he asked her if she had any money in her wallet, and told her to lock the front door.

Appellant then ordered H.L. to the bathroom in the back of the store. There, he used plastic zipties[1] to bind her wrists behind her back, and connected the zipties to the bathroom's handicap pole. He also bound her ankles with zipties, and gagged her with a pair of underwear. Just prior to leaving, he pulled down her tank top and bra, exposing her breasts. He briefly stared at her, and then left. H.L. freed herself from the zipties and called 911. Her wallet was missing from her purse.

Investigator Glenn of the Lynchburg Police Department showed H.L. eight separate photo arrays of possible suspects. H.L. identified appellant from a photo in the eighth array as the person who attacked her.[2] At trial, she again identified appellant as the person who attacked her.

Two weeks after the robbery, appellant was detained in Chesapeake following a traffic stop. Pursuant to a search warrant, Detective Thomas searched appellant's car, and recovered,

---

[1] "Zipties," or "cable ties," are "self-locking devices, molded from nylon [and] designed to encircle and hold together a bundle of electrical wires or similar items." Panduit Corp. v. All States Plastic Mfg. Co., 744 F.2d 1564, 1567 (Fed. Cir. 1984).

[2] The eighth photo array consisted of six photos of the upper torso and head of six different men, each directly facing the camera and standing in front of a gray wall. The photos, each slightly larger in size than a credit card, were printed in color on white paper and numbered one through six.

among other things, a package of black and clear plastic zipties, khaki cargo shorts, and a black BB handgun.

At trial, the Commonwealth was permitted to call four witnesses, each of whom was a victim of a robbery perpetrated in a manner strikingly similar to the H.L. robbery, to prove appellant's identity as the person who robbed H.L. It determined that the "other incidents [were] sufficiently idiosyncratic to permit an inference of a common perpetrator." At trial, K.W., B.R., and A.H., victims of robberies similar in pattern to that of H.L., each testified that appellant was the person who attacked them. A.D., a fourth victim, was subpoenaed to testify and was present, but was not called as a witness.

H.L, K.W., B.R., and A.H. each was a young, female clerk alone in a store when she was robbed by a man. In each incident, the man engaged his victim in conversation and produced a weapon when she was not looking at him. In all but one incident,[3] the victim testified that the weapon was a black handgun. In each incident, the robber forced his victim to secure the business' main entrance. After obtaining money from each of the women, he forced her into the back of the store, then into a bathroom. In all but one incident,[4] he bound the victim's hands and ankles with plastic zipties. In each incident, he either forced the victim to disrobe or physically disrobed her, and then either stared at or sexually touched her. Each incident occurred in June 2005, and each of the victims identified appellant as her attacker.

During jury deliberations, appellant's counsel asked the prosecutor why A.D., the fourth victim of a similar robbery, was not called to testify. The prosecutor informed appellant's counsel that when A.D. saw appellant in the courtroom prior to trial, she was uncertain whether

---

[3] In the K.W. robbery, the weapon was a knife.

[4] K.W. locked herself in the bathroom, with her attacker outside, avoiding being bound with zipties.

she could recognize him as the man who attacked her.[5]  The jury found appellant guilty of robbery and the use of a firearm in the commission of the robbery of H.L. and fixed his sentence at fifteen years in prison.

Prior to sentencing, appellant moved to dismiss the indictment, contending the Commonwealth's failure to disclose exculpatory evidence violated a court order, as well as the Due Process Clauses of the United States and Virginia Constitutions.  The trial court denied the motion, finding the Commonwealth's failure to disclose that A.D. was uncertain she could recognize appellant as her attacker was not exculpatory.  It also determined that, even if it were exculpatory, the undisclosed evidence was not material, concluding that there was no reasonable probability that the result of the trial would have been different if the evidence had been disclosed to appellant.  This appeal followed.

## II.  ANALYSIS

On appeal, appellant contends that the trial court erred in permitting the Commonwealth to present evidence of other crimes to establish his identity as the person who attacked H.L.  He also contends that the trial court erred in denying his post-trial motion to dismiss the indictment because the prosecutor failed to disclose A.D.'s uncertainty on the day of trial that she could recognize appellant as the man who attacked her in a separate robbery.

### A.  Evidence of Other Crimes

"Evidence that proves or tends to prove that the accused committed a crime separate from the one charged is prejudicial by its very nature, and should generally be excluded from trial."

---

[5] The prosecutor told appellant's counsel that A.D. approached her just prior to trial and told her that she might not be able to "recognize" appellant.  The prosecutor instructed A.D. to look at appellant when he was led into the courtroom, and then to let her know for certain whether she would be able to recognize him as her attacker.  After appellant was brought into the courtroom, the prosecutor looked back at A.D., who put her hands in the air.  The prosecutor interpreted this gesture to mean that A.D. remained uncertain she could say appellant was her attacker, and decided not to call her as a witness.

Jennings v. Commonwealth, 20 Va. App. 9, 14-15, 454 S.E.2d 752, 754-55 (1995) (citing

Kirkpatrick v. Commonwealth, 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970)).  However,

> the defendant's identity as the criminal actor is a threshold fact that any prosecution must establish.  Proving this fact does not conflict "with the prior-bad-acts doctrine (he has done it before, thus, he did it this time) or the other-crimes principle (he committed one crime, thus, he committed another)" which are both "applications of the same rule prohibiting the use of propensity evidence in criminal prosecutions."  Thomas, 44 Va. App. at 756, 607 S.E.2d at 745.  Proof of the "identity of the accused," when that question is "in issue," has been universally understood as outside the prohibition on mere propensity evidence for logical relevance purposes.  Gonzales v. Commonwealth, 45 Va. App. 375, 381, 611 S.E.2d 616, 619 (2005) (*en banc*) (citation and footnote omitted); see also Commonwealth v. Minor, 267 Va. 166, 174, 591 S.E.2d 61, 66-67 (2004) (recognizing that a "contested issue about the defendant's identity" would generally render other crimes evidence logically relevant).

Pryor v. Commonwealth, 50 Va. App. 42, 52-53, 646 S.E.2d 21, 26 (2007).

Here, the Commonwealth's evidence established the striking similarity between the

attack on H.L. and the separate attacks on A.H., B.R., and K.W., evidence from which the jury

could reasonably conclude that H.L.'s identification of appellant as her attacker was accurate.

H.L. testified that her attacker used a small black handgun during the robbery, as did A.H. and

B.R.  H.L. testified that appellant used zipties to bind her, as did A.H. and B.R.[6]  Two weeks

after the robbery of H.L, police recovered zipties and a black BB handgun from appellant's car.

In that same search, police recovered khaki cargo shorts, which H.L. testified matched the shorts

appellant was wearing when he attacked her.

In admitting evidence of other robberies, the trial court cautioned the jury that it could

"consider evidence that the defendant committed offenses other than the offense for which he is

on trial only as evidence of the defendant's identity in connection with the offense for which he

---

[6] K.W. testified that appellant robbed her using a knife.  She avoided being bound by locking herself in a bathroom.

is on trial and for no other purpose."  We presume the jury followed the trial court's limiting instructions and considered the evidence consistent with the instructions it received.  Jennings, 20 Va. App. at 19, 454 S.E.2d at 756 (citing LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983)).

We conclude the trial court did not err by admitting evidence of other crimes to establish appellant's identity as the person who robbed H.L.

B.  Exculpatory Evidence

Appellant contends that the trial court erred in failing to find that the undisclosed evidence (A.D.'s uncertainty in recognizing appellant as her attacker on the day of this trial) was exculpatory and material, and in failing to dismiss the indictment for that reason.

In criminal prosecutions, the Commonwealth is required to

> disclose all material exculpatory evidence to an accused.  Jefferson v. Commonwealth, 27 Va. App. 477, 486, 500 S.E.2d 219, 224 (1998) (citing Brady v. Maryland, 373 U.S. 83, 87 (1963); Stover v. Commonwealth, 211 Va. 789, 795, 180 S.E.2d 504, 509 (1971)).  Exculpatory evidence is evidence that is favorable to the accused and includes impeachment evidence.  United States v. Bagley, 473 U.S. 667, 676 (1985); Robinson v. Commonwealth, 231 Va. 142, 150, 341 S.E.2d 159, 164 (1986).  The withholding of information from a defendant constitutes a Brady violation when the information is "(1) either directly exculpatory or [has] impeachment value, (2) suppressed by the government, and (3) material."  Lockhart v. Commonwealth, 34 Va. App. 329, 345, 542 S.E.2d 1, 8 (2001) (citing Strickler v. Greene, 527 U.S. 263, 280-81 (1999)).
>
> "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."  Bagley, 473 U.S. at 682.  "'A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.'"  Soering v. Deeds, 255 Va. 457, 464, 499 S.E.2d 514, 517 (1998) (quoting Bagley, 473 U.S. at 682).  Therefore, appellant "must show that when the case is evaluated in the context of the entire record, including the omitted evidence, a jury would have entertained a reasonable doubt" as to appellant's guilt.  Id.  "The mere possibility that an item of undisclosed information might have helped the

- 6 -

> defense . . . does not establish 'materiality' in the constitutional sense." United States v. Agurs, 427 U.S. 97, 109-10 (1976). "The materiality inquiry is a context-specific determination; evidence that is material in one setting could be immaterial in another." Lockhart, 34 Va. App. at 346, 542 S.E.2d at 9.

Frontanilla v. Commonwealth, 38 Va. App. 220, 226-27, 562 S.E.2d 706, 709 (2002).

Assuming, without deciding, that the undisclosed information was exculpatory, we nevertheless conclude from the record that the undisclosed information was not material in establishing that appellant was guilty of robbing H.L. Before trial, the trial court granted the Commonwealth permission to call K.W., B.R., A.H., and A.D., all victims of robberies similar in manner of perpetration to that of H.L., to corroborate H.L.'s identification of appellant as her attacker. At trial, H.L.'s testimony clearly identified appellant as her attacker. The testimony of A.H., B.R., and K.W. also clearly identified appellant as the person who attacked them on separate but strikingly similar occasions in June 2005. The undisclosed uncertainty of A.D.'s ability to recognize appellant as her attacker did not diminish the certainty with which H.L. identified appellant as the person who attacked her, nor did it diminish the other victims' identifications of appellant as the person who attacked each of them. Moreover, evidence found in appellant's car, specifically the khaki cargo shorts, zipties, and black BB handgun, corroborated H.L.'s testimony of her attacker's clothing, as well as his pointing a black pistol at her during the robbery and binding her with zipties.

From the record before us, we conclude that it is not reasonably probable that the jury's verdict would have been different had it been informed that A.D. was uncertain on the day of trial she could recognize appellant as her attacker. Bagley, 473 U.S. at 682. Because we conclude the Commonwealth's failure to disclose that potentially exculpatory evidence was not material, we hold that the trial court did not err in denying appellant's post-trial motion to dismiss the indictment based on the undisclosed evidence.

## III. CONCLUSION

For the foregoing reasons, we affirm appellant's convictions of robbery and use of a firearm in the commission of that robbery. We conclude that the trial court did not err in admitting other crimes evidence to prove the identity of appellant as the person who robbed H.L. and that it did not err in failing to dismiss the indictment on the grounds that the Commonwealth withheld exculpatory evidence.

<u>Affirmed.</u>